In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00008-CV


______________________________




BOB J. HERRIN, M.D., Appellant



V.



THE MEDICAL PROTECTIVE COMPANY


AND BRUCE C. CRIM, Appellees



 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 99-0316




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Grant



O P I N I O N



 Bob J. Herrin, M.D., appeals the trial court's granting of summary judgment for The Medical
Protective Company and Bruce C. Crim (Medical), on all claims. Herrin now appeals the
common-law fraud, breach of fiduciary duty, violations of the Texas Deceptive Trade Practices Act
(DTPA) and Texas Insurance Code, and breach of contract claims. 

 This case turns on alleged misrepresentations made by Medical to Herrin. Herrin contends
Medical promised that his consent for a $300,000 settlement would not in any way affect his liability
coverage. Herrin consented to settle this malpractice case for $300,000 in 1995, and the claim was
paid in early 1996. In April 1997, Herrin's insurance renewal was denied by Medical for the 1997-1998 policy term. Herrin filed suit against Medical on April 9, 1999.

 Medical filed a no-evidence motion for summary judgment and a traditional motion for
summary judgment on June 11, 2001. The trial court granted Medical's Motion for Summary
Judgment for all claims brought by Herrin on September 21, 2002, without specifying on what
grounds it relied on in reaching its decision.

Facts

 Medical is in the business of providing professional liability coverage for physicians and
dentists. Herrin is a general surgeon who was insured by Medical from 1956 to 1997. In December
1995, on the advice of Medical, Herrin agreed to settle for $300,000 a malpractice claim arising from
a laproscopic surgery he performed. Herrin, Chuck Curtice (Medical's general agent), and an
attorney provided by Medical attended the mediation concerning the $300,000 settlement. That
claim was ultimately settled and paid in early 1996.

 Curtice testified at deposition he recommended Herrin consent to a $300,000 settlement in
the Guffey case. Curtice further testified he did not inform Herrin of any consequences the
settlement might have had on his insurance coverage. Herrin stated in his affidavit Medical never
notified him of any possible effect the $300,000 settlement might have had on his coverage. Herrin
testified at deposition he was specifically told by Curtice the $300,000 settlement was "nothing
unusual" and would have no effect on his relationship with Medical. Herrin's affidavit further stated
Curtice implied the settlement would not result in Herrin's policy being cancelled or not renewed in
the future because Herrin had a long-standing relationship with Medical, coupled with only a few
claims over the span of his career. According to Herrin, Curtice also stated that in Herrin's field of
surgery, he had a "particularly impressive" record, with very few claims filed against him. 

 On April 11, 1997, Medical notified Herrin his policy would not be renewed for the 1997-1998 year due to "claim and suit frequency and severity." The policy at that time expired August 6,
1997. A decision was originally made not to renew Herrin's policy for the 1996-1997 policy year,
but this decision could not be implemented within the ninety-day notice requirement set out in the
terms of the policy. There is evidence that field personnel, including Curtice, thought Herrin's policy
should be renewed, although Medical ultimately decided not to renew the policy. Herrin was unable
to obtain sufficient professional coverage due to Medical not renewing his policy. Ultimately, Herrin
retired prematurely from practicing medicine because he could not receive the necessary coverage
to continue his surgery practice. 

Standard of Review

 A traditional motion for summary judgment is properly granted only when the movant
establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991);
Holmstrom v. Lee, 26 S.W.3d 526, 530 (Tex. App.-Austin 2000, no pet.). A defendant seeking
summary judgment must negate as a matter of law at least one element of each of the plaintiff's
theories of recovery or plead and prove as a matter of law each element of an affirmative defense.
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant establishes its
right to summary judgment, the plaintiff must then raise a fact issue. Id. 

 A party seeking a no-evidence summary judgment, on the other hand, does not bear the
burden of establishing its right to judgment by proving each defense or claim, but instead simply
asserts there is no evidence of one or more essential elements of claims on which the opposing party
will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); Holmstrom, 26 S.W.3d at 530. A
no-evidence summary judgment is essentially a pretrial directed verdict, to which we apply the same
legal sufficiency standard of review, asking whether the nonmovant failed to produce more than a
scintilla of probative evidence to raise a genuine issue of material fact as to an essential element on
which the nonmovant would have the burden of proof. Tex. R. Civ. P. 166a(i); Holmstrom, 26
S.W.3d at 530. 

 In reviewing the granting of summary judgment, we take as true evidence favorable to the
nonmovant and make every reasonable inference and resolve all doubts in favor of the nonmovant.
Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985); McMillan v. Parker, 910
S.W.2d 616, 618 (Tex. App.-Austin 1995, writ denied). When a trial court's order granting
summary judgment does not specify the grounds on which it relied, the reviewing court must affirm
the summary judgment if any of the summary judgment grounds are meritorious. FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).Analysis

Fraud & Misrepresentation

 Herrin's first point of appeal is that summary judgment should not have been granted on the
common-law fraud and misrepresentation claims. Medical argued that there was no evidence of one
or more elements of this claim, that there was not a genuine issue of material fact for each element,
and that the claim was not within the limitations period. 

Traditional Summary Judgment

 Herrin asserts there is a genuine issue of material fact for each of the elements of
common-law fraud, precluding Medical's summary judgment. In reviewing the granting of summary
judgment, this court will take all evidence favorable to the nonmovant as true. Guaranty Fed. Sav.
Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990). The movant has the burden
of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter
of law. Id. Every reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in its favor. Id.

 The elements of common-law fraud are that (1) a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it was false or
made it recklessly without any knowledge of its truth and as a positive assertion; (4) the
representation was made with the intention that it be acted on by the other party; (5) the party acted
in reliance on the representation; and (6) the party suffered injury. Johnson & Higgins of Tex., Inc.
v. Kenneco Energy, Inc., 962 S.W.2d 507, 524 (Tex. 1998). 

 Herrin produced evidence that Curtice, Medical's agent, represented the $300,000 settlement
would have no impact on Herrin's ability to maintain professional coverage with Medical. Medical
did in fact drop Herrin's professional coverage. Evidence establishes Medical considered dropping
Herrin's coverage in 1996, shortly after the settlement of $300,000 was paid. However, Herrin was
not actually dropped for another year so that Medical could comply with the policy's notice
provisions. 

 Medical asserted in oral argument that to have a legal basis for fraud, Curtice would have had
to have known that Medical would drop Herrin's coverage at the time he recommended Herrin settle
the suit for $300,000. However, the intent element of common-law fraud requires that he know or
should have known. Id. Therefore, Herrin only has to raise an issue of material fact as to whether
Curtice should have known that the $300,000 settlement would cause Medical to not renew Herrin's
coverage. In deposition, Curtice testified that Medical reviews an insured's claims history to
consider nonrenewal when a claim in excess of $100,000 is paid. This summary judgment proof
establishes an issue of material fact as to whether Curtice knew or should have known Herrin's policy
would not be renewed when he advised Herrin concerning the $300,000 settlement. Even if we
adopted Medical's interpretation that Herrin must prove Curtice knew Medical would not renew his
policy when the settlement of $300,000 was made, there is still sufficient summary judgment proof
creating an issue of fact precluding summary judgment. 

 Summary judgment proof of Herrin's reliance on Medical's statements was also raised. 
Herrin was reluctant to consent to the $300,000 settlement. Herrin contends he relied on the
representations from Medical that his coverage would not be affected when he consented to the
$300,000 settlement. This creates an issue of material fact as to whether Herrin relied on the
representation of Medical concerning the $300,000 settlement and future coverage. There is
evidence it was Medical's desire that Herrin agree to the $300,000 settlement. Taking Herrin's
affidavit as true, Medical represented to Herrin he would not lose future coverage in order to induce
Herrin's consent to this settlement. 

 Herrin asserts he relied on Medical's assurance he would continue to receive professional
coverage. Medical emphatically stated to this court in oral argument that Herrin never testified at
deposition about any representations made to him by Curtice concerning the $300,000 settlement and
how it would affect his coverage. Medical further asserted that Herrin "created a fact issue" by
contradicting his deposition testimony with a "self-serving affidavit." (1) However, Herrin's deposition
testimony and affidavit are consistent. Herrin maintained Curtice assured him his consent to the
settlement would not have an effect on his relationship with Medical. The record reflects Herrin
testified in deposition that Curtice told him during the mediation of the $300,000 settlement that if
Herrin consented to the settlement, it would not affect Medical's decision concerning Herrin's favor
or disfavor with the company." Herrin testified at deposition that Curtice represented to him during
the mediation that it was "no problem," "was not anything unusual," and that this settlement would
have no effect on Herrin's relationship with Medical. There is evidence of a conversation between
Curtice and Herrin during the mediation that implicated future liability coverage. While this court
realizes that the goal of advocates is to zealously represent their clients, Medical overstepped the line
when it misrepresented the summary judgment proof to this court. 

 Genuine issues of material fact were raised concerning Herrin's injury as a result of the
alleged fraudulent statements. Herrin suffered the injury of his malpractice policy not being renewed
by Medical and subsequently was forced to discontinue his surgery practice. Herrin has established
a genuine issue of material fact as to each element of common-law fraud. Therefore, summary
judgment was improper as a matter of law. 

 Herrin contends the fraud claim was filed within the statute of limitations. Fraud claims have
a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code Ann. § 16.004 (Vernon Supp.
2002). Medical contends that Herrin's cause of action did not accrue within the limitations period,
and that Herrin cannot utilize the discovery rule because he did not plead it. Herrin contends the
limitations period was tolled by the discovery rule; however, the discovery rule does not come into
play in this case. The discovery rule applies if: (1) the injury is inherently undiscoverable; and (2)
the evidence of the injury is objectively verifiable. Velsiclo Chem. Corp. v. Winograd, 956 S.W.2d
529, 531 (Tex. 1997). There is no evidence Herrin had any reason to know his policy would not be
renewed until he received the letter from Medical on April 15, 1997. Thus, the cause of action
accrued on that day, and Herrin is within the period of limitations. 

 Evidence exists for each element of common-law fraud, as mentioned above. Therefore, the
no-evidence summary judgment was improperly granted. This point of error is sustained.



Breach of Fiduciary Duty and Breach of Good Faith and Fair Dealing

 Herrin contends that an informal fiduciary duty existed between he and Medical and that
Medical breached that duty. Medical attacked this claim in its Motion for Summary Judgment, also
asserting specifically that Herrin's suit was not within the limitations period. Medical also filed a
no-evidence motion for summary judgment on this point.

 Herrin asserts there is a genuine issue of material fact for each of the elements of breach of
fiduciary duty and good faith and fair dealing, precluding Medical's summary judgment. Herrin
makes no contention that a formal fiduciary relationship existed between he and Medical. Rather,
Herrin asserts there was an informal fiduciary relationship. 

 Informal fiduciary relationships may arise in circumstances "where a special confidence is
reposed in another who in equity and good conscience is bound to act in good faith and with due
regard to the interests of the one reposing confidence." Tex. Bank & Trust Co. v. Moore, 595 S.W.2d
502, 507 (Tex. 1980); Ho v. Univ. of Tex. at Arlington, 984 S.W.2d 672, 692 (Tex. App.-Amarillo
1998, pet. denied). Whether an informal fiduciary relationship exists is typically determined by a
trier of fact because those relationships hinge on the surrounding circumstances. MacDonald v.
Follett, 142 Tex. 616, 180 S.W.2d 334, 338-39 (1944); Ho, 984 S.W.2d at 692. 

 Certain "special relationships" give rise to a tort duty of good faith and fair dealing. Crim
Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 594 (Tex. 1992). The
common-law duty of good faith and fair dealing does not exist in all contractual relationships. 
Subaru of Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, slip op. at *9 (Tex. 2002). The duty
only arises when a contract creates or governs a special relationship between the parties. Crim Truck
& Tractor Co., 823 S.W.2d at 594. A fiduciary duty encompasses at the very minimum a duty of
good faith and fair dealing, but the converse is not true. Id. The duty of good faith and fair dealing
merely requires the parties to "deal fairly" with one another and does not require the high standard
of trust present in a fiduciary relationship. Id. at 592-93. 

 Summary judgment proof exists to establish the confidential relationship between Herrin and
Medical, specifically through Curtice giving rise to a potential informal fiduciary relationship. In
deposition, Curtice testified he knew and worked with Herrin for approximately fifteen years. 
Herrin's affidavit provides further proof Herrin regarded his relationship with Curtice to be a
confidential one. Herrin stated he trusted Curtice's advice concerning the settlement because of the
nature of their long-standing relationship. Herrin was covered by Medical for thirty-one years. 
Moreover, in deposition, Herrin testified repeatedly about his trust in Medical and their special
relationship, which required honesty and disclosure. 

 In Crim Truck & Tractor Co. v. Navistar International Transportation Corp., the issue was
whether there was evidence of a confidential relationship giving rise to a fiduciary duty between the
parties to a franchise agreement. 823 S.W.2d at 592. In Crim Truck, the trial court rendered
judgment for the Crims based on jury findings of breach of contract, breach of fiduciary duty, and
fraud. Id. This court reversed the trial court, finding no evidence of a confidential relationship that
gave rise to a fiduciary duty. Id. The Texas Supreme Court affirmed. Id. 

 The present case differs from Crim Truck because this is an appeal from a summary
judgment, rather than a trial on the merits. Determining whether an informal fiduciary relationship
exists is an issue for the trier of fact. While informal fiduciary relationships are rarely recognized,
that does not preclude the possibility that a fact-finder could find such a relationship existed. 
Medical failed to address the issue of an informal fiduciary relationship between Herrin and Medical,
as Herrin has alleged. It only asserted that as a matter of law, there was no formal fiduciary
relationship between Herrin and Medical, and that statement is accurate. This does not foreclose the
possibility of a fact-finder finding an informal fiduciary relationship.

 Herrin has also produced summary judgment proof that Medical breached the duty of good
faith and fair dealing. Herrin asserted the claims of breach of fiduciary duty and breach of duty of
good faith and fair dealing together; however, they are separate causes of actions with separate
standards. The duty of good faith and fair dealing does not require the party to place the interest of
the other party before his or her own. Because the duty of good faith and fair dealing is encompassed
in the more stringent fiduciary duty, Herrin has raised a genuine issue of material fact for the good
faith and fair dealing claim. Herrin has a long-standing thirty-one-year relationship with Medical,
and Herrin specifically dealt with Curtice for fifteen years. Moreover, the policy's requirement of
Herrin's consent to settle a claim is further summary judgment proof that Medical was under a duty
of good faith and fair dealing. 

 Herrin has produced evidence creating a genuine issue of material fact as to whether a
confidential relationship existed. Therefore, summary judgment was inappropriate, and the point
of error as to whether an informal fiduciary relationship existed between Herrin and Medical is
sustained. There is also an issue of material fact as to the duty of good faith and fair dealing.

 The appropriate statute of limitations for breach of fiduciary duty is four years. See Tex. Civ.
Prac. & Rem. Code Ann. § 16.004. Herrin's breach of fiduciary duty claim arose April 15, 1997,
when he received the nonrenewal letter from Medical. Herrin filed this cause of action on April 9,
1999, which was within the appropriate period.

 In the case of informal fiduciary relationship, when the issue is one of no evidence, it
becomes a question of law. Crim Truck & Tractor Co., 823 S.W.2d at 594. In the present case,
Herrin provided this court with summary judgment proof raising a genuine issue of material fact for
breach of an informal fiduciary duty. Because there is evidence of an informal fiduciary relationship,
Herrin's point of error is sustained.

Article 21.21 of Insurance Code

 Herrin alleged Medical engaged in unfair insurance practices under Article 21.21 of the
Texas Insurance Code by failing to disclose the consequences of his consent to the $300,000
settlement. Medical attacked this claim in its traditional Motion for Summary Judgment and
No-Evidence Summary Judgment Motion.

 Herrin contends that a genuine issue of material fact exists for each element of the Texas
Insurance Code claim. Herrin argues Medical violated Section 4(11)(b), (c), and (e) of Article 21.21
of the Insurance Code. That portion of the statute reads

 Sec. 4. The following are hereby defined as unfair methods of competition
and unfair and deceptive acts or practices in the business of insurance: 
 (11) Misrepresentation of Insurance Policy. Misrepresenting an insurance
policy by: 
 (a) making an untrue statement of material fact; 
 (b) failing to state a material fact that is necessary to make other statements
made not misleading, considering the circumstances under which the statements were
made; 
 (c) making a statement in such manner as to mislead a reasonably prudent
person to a false conclusion of a material fact; 
 (d) making a material misstatement of law; or 
 (e) failing to disclose any matter required by law to be disclosed, including
a failure to make disclosure in accordance with another provision of this code. 


Tex. Ins. Code Ann. art. 21.21, § 4(11) (Vernon Supp. 2002). 


 Article 21.21 of the Texas Insurance Code prohibits misrepresentations by insurers about the
benefits or advantages of the policy and prohibits making any statement with respect to the business
of insurance that is untrue, deceptive, or misleading. Tex. Ins. Code Ann. art. 21.21, § 4.

 Herrin produced evidence that Medical failed to disclose information concerning the effect
of the $300,000 settlement on Herrin's future insurance coverage; that it was this lack of disclosure
that caused Herrin's injury; that he was not aware that his coverage would be terminated if he
consented to the $300,000 settlement; that Herrin was induced to consent to the $300,000 settlement
with Medical's promise that his coverage in the future would continue and remain unaffected; that
after consenting to the settlement, Herrin was dropped from Medical's coverage, and that he was
ultimately forced to retire prematurely because of his inability to receive professional coverage.

 Herrin has produced sufficient evidence to create a genuine issue of material fact for his
Insurance Code claims. Therefore, Herrin's point of error concerning the Insurance Code is
sustained.

 The limitations period for Insurance Code claims is two years. Tex. Ins. Code Ann.
art. 21.21, § 16(d) (Vernon Supp. 2002). Herrin's Insurance Code claim also did not accrue until he
received the nonrenewal letter from Medical April 15, 1997. This claim was filed April 9, 1999,
within the limitations period. 

 Because summary judgment proof was raised showing a genuine issue of material fact for
each element of the Article 21.21 insurance claim, the no-evidence summary judgment motion was
improperly granted for Medical. This point of error is sustained.

DTPA

 Herrin pleaded that Medical violated Section 17.46 of the DTPA. Medical filed a traditional
Motion for Summary Judgment contending a violation of the statute of limitations and a no-evidence
summary judgment motion.

 The basic elements of the DTPA are (1) plaintiff is a consumer; (2) defendant engaged in
false, misleading, or deceptive acts; and (3) the acts were a producing cause of the plaintiff's injuries. 
Tex. Bus. & Com. Code Ann. § 17.46 (Vernon 2002); Doe v. Boys Club of Greater Dallas, Inc.,
907 S.W.2d 472 (Tex. 1995). A consumer is defined as "an individual, partnership, corporation, this
state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods
or services, except that the term does not include a business consumer that has assets of $25 million
or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." 
Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon 2002). Services are defined as "work, labor, or
service purchased or leased for use, including services furnished in connection with the sale or repair
of goods." Tex. Bus. & Com. Code Ann. § 17.45(2) (Vernon 2002). Herrin sought to acquire the
services of future professional insurance coverage from Medical, so he is a consumer for the
purposes of the DTPA. The DTPA does not require an actual purchase; rather, a consumer who
merely seeks or acquires goods or services falls within the protection of the DTPA. 

 Section 17.46(b) is a laundry list of specifically prohibited acts under the DTPA, and Section
17.46(b)(23) prohibits "the failing to disclose information concerning goods or services which was
known at the time of the transaction if such failure to disclose such information was intended to
induce the consumer into a transaction into which the consumer would not have entered had the
information been disclosed." Tex. Bus. & Com. Code Ann. § 17.46(b)(23). While Section
17.46(b)(23) does require that the actor intend to induce the consumer into a transaction by not
disclosing information, there are two subsections of Section 17.46(b) that do not require intent. Tex.
Bus. & Com. Code Ann. § 17.46(b). Sections 17.46(b)(5) and (7) only require that the
representation made to the consumer be false; no intent of misrepresentation is required. Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 501-02 (Tex. 2001). The false representation itself is
actionable. Id. at 502. Sections 17.46(b)(5) and (7) prohibit "false, misleading, or deceptive acts or
practices [including] . . . representing that goods or services have . . . characteristics, ingredients,
uses, [or] benefits . . . which they do not have" and "representing that goods or services are of a
particular standard, quality, or grade . . . if they are of another." Tex. Bus. & Com. Code Ann.
§ 17.46(b)(5), (7). Additionally, "actionable representations may be oral or written." Hedley
Freedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 838 (Tex. App.-Amarillo 1993, writ denied). 

 Herrin has produced evidence raising a genuine issue of material fact for each element of his
DTPA claim. Herrin is an individual who sought the services of future insurance coverage from
Medical. There is summary judgment proof that Medical engaged in "false, misleading, or deceptive
acts" by failing to disclose the consequences of his consent to the $300,000 settlement. Tex. Bus.
& Com. Code Ann. § 17.46(a). Herrin raised summary judgment proof that he was injured by
Medical's actions in that he had to retire prematurely because he was unable to attain professional
liability coverage. 

 The trial court erred in granting Medical's Motion for Summary Judgment because Herrin
produced evidence of a genuine issue of material fact for each element of the DTPA. Thus, the
DTPA point of error is sustained.

 The limitations period for DTPA claims is two years. Tex. Bus. & Com. Code Ann.
§ 17.565 (Vernon 2002). Herrin's DTPA claim did not accrue until he received the nonrenewal letter
from Medical on April 15, 1997. The undisputed evidence shows this claim was filed April 9, 1999,
within the limitations period. 

 Summary judgment proof raises a genuine issue of material fact for each element of the
DTPA claim. Because there is evidence of a genuine issue of material fact for each element, there
is some evidence for each element, and therefore, the trial court's dismissal of the DTPA claim is
reversed and remanded for trial.

Breach of Contract

 Herrin contends Medical breached an "agreement" with him. The pleadings generally state
this cause of action, without specifying particular agreements. This breach of "agreement" will be
called breach of contract. Medical's Motion for Summary Judgment and No-Evidence Motion for
Summary Judgment only addressed the alleged breach of contract with respect to the written policy. 
Medical also asserted in its Motion for Summary Judgment this claim was outside the applicable
statute of limitations.

 Herrin contends there is a genuine issue of material fact for each of the elements of the breach
of contract claim. The general rules of contract construction govern insurance policy interpretation. 
Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex. 1997). The portion of the policy
concerning cancellation and nonrenewal reads

 If this policy is cancelled or nonrenewed at the Company's request, other than for
nonpayment of premiums or because the insured is no longer licensed, the Company
shall give at least 90 days written notice to the Insured and shall state in the notice
the reason for cancellation or nonrenewal. Such notice of cancellation may only be
given within the first 90 days from the effective date of the policy.

 The policy required Medical to give Herrin ninety days' notice before cancellation or
nonrenewal. As evidenced by the letter addressed to Herrin dated April 11, 1996, Medical complied
with the policy requirements, actually giving Herrin almost 120 days' notice of the nonrenewal. 
Herrin's coverage was not actually terminated until August 8, 1997, which was more than ninety days
after the notice sent to Herrin via the April 1997 letter. Medical complied with the terms of the
agreement. 

 Herrin spent a significant amount of time at oral argument discussing alleged breaches of the
notice requirement, as well as assertions that the policy was ambiguous with regard to the notice of
nonrenewal. There is no ambiguity in the notice requirement of the policy. The policy required at
least ninety days' notice prior to nonrenewal, and Medical complied with the terms of the contract. 
Therefore, there is no genuine issue of material fact concerning the written policy agreement between
Medical and Herrin. There may have been summary judgment proof of a subsequent oral contract
between Herrin and Medical; however, Herrin failed to raise this issue. This point of error is
overruled. Therefore, we need not reach Medical's assertion of violation of the statute of limitations
on this issue.

 Herrin has not produced any summary judgment proof establishing each element of the
breach of contract claim with respect to the written policy. Therefore, Herrin's point of error
concerning breach of contract is overruled. 

Conclusion

 In conclusion, summary judgment for the common-law fraud, breach of fiduciary duty and
good faith and fair dealing, DTPA, and Insurance Code claims is reversed and remanded for trial. 
Summary judgment is affirmed for the breach of contract claim.




 Ben Z. Grant

 Justice


Date Submitted: October 1, 2002

Date Decided: October 29, 2002


Publish
1. Medical stated in oral argument, "Dr. Herrin's deposition he was asked specifically what was
he told at that deposition by Chuck Curtice. . . . Dr. Herrin's original testimony was that nothing was
said regarding whether or not his policy would be renewed or not. Nothing was said. And then
suddenly he [Herrin] comes up with this self-serving affidavit to attach as summary judgment
evidence, which now based on his own statement created a fact issue. A person cannot create a fact
issue by contradicting their own previous testimony. . . . . He has totally changed his testimony." 
The bench responded, "He testified originally that nothing was said about it . He came along in an
affidavit and said that he was promised a renewal?" Medical: "Right." Medical further stated that
future coverage, "didn't come up at that mediation." 

 Again later in oral argument Medical asserted there is "no evidence to support something was
said at that mediation. Both Chuck Curtice and Dr. Herrin in deposition said nothing was said, one
way or the other. Nothing was said." 



in a hearing on a motion for new trial, a juror would have been
prohibited from testifying "to the effect of anything on any juror's mind or emotions or mental
processes, as influencing any juror's assent to or dissent from the verdict or indictment." Tex. R.
Evid. 606(b).