Affirmed and Memorandum Opinion filed April 24, 2003













Affirmed and
Memorandum Opinion filed April 24, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00851-CV

____________

 

JAMES KEITH WINGATE AND KAREN WINGATE, Appellants

 

V.

 

ELICK GREGORY ACREE, Appellee

 

_________________________________________________________________

 

On Appeal from
the 405th District Court

Galveston County, Texas

Trial Court
Cause No. 98CV0791

 

_________________________________________________________________

 

M E M O R A
N D U M   O P I N I O N

            James Keith Wingate and Karen
Wingate appeal a judgment favoring Elick Gregory Acree.  In his
petition, Acree alleged, inter alia, DTPA[1]
violations, breach of contract, breach of fiduciary duty, and fraud.  The trial court found the breach of contract
cause of action was established as a matter of law and did not submit the issue
to the jury.  Finding for Acree on the DTPA, breach of fiduciary duty, and fraud
causes of action, the jury awarded no actual 








damages
but assessed exemplary damages. The trial court granted Acree’s
motion for entry of judgment, made an actual damages finding, and entered
judgment accordingly.

            In eight issues, the Wingates contend: (1) the lawsuit should not have proceeded
because of an automatic bankruptcy stay; (2) the trial court erred in awarding
actual damages because the jury did not find any actual damages; (3) Acree’s claims were barred by applicable statutes of
limitations; (4) the DTPA is not applicable to a loan of money; (5) fraud was
not shown because there was no evidence of the appellants’ intent not to pay at
the time of loan; (6) the evidence is legally insufficient to prove the existence
of a fiduciary duty; (7) the evidence is legally insufficient to prove breach
of contract; and (8) there was no basis for the trial court’s award of
attorney’s fees.  We affirm.

I.  factual background

            Acree and
the Wingates maintained personal friendships.  Acree owned a
certificate of deposit that was near maturity. 
He asked Karen Wingate, who was the branch manager of his bank, for
investment advice regarding the funds. 
She told him about her husband’s business, K and K Preferred Auto, which
was involved in wholesale used car auctioning. 
In exchange for providing money to the business, Acree
contends he was promised a partnership in the business and was given a
promissory note as security.  Although
the Wingates made a few small payments on the note,
they ultimately failed to pay the amount due, and Acree
filed suit.

            The jury found that Keith and Karen
Wingate (1) knowingly engaged in false, misleading, or deceptive acts or
practices; (2) knowingly engaged in unconscionable actions; (3) owed a fiduciary
duty to Acree and breached that duty; and (4)
committed intentional fraud with careless disregard for Acree’s
rights.  A question was not submitted to
the jury regarding the breach of contract claim or actual damages beyond mental
anguish.  The jury found no mental
anguish damages but awarded Acree exemplary damages
in the amount of $62,500 individually against the Wingates.  After the verdict was returned, the trial
court entered additional findings that (1) the balance due under the promissory
note was $72,098.40; (2) the actual damages suffered by Acree
were also $72,098.40; and (3) Acree was entitled to
attorneys’ fees.  The trial court found
the Wingates breached their contract with appellee, and such finding, along with those of the jury,
were incorporated into the final judgment.

II. 
analysis

A.  The Bankruptcy Stay

            In their first issue, the Wingates contend the lawsuit should not have proceeded to
trial because they had filed for bankruptcy and there is nothing in the record
indicating the automatic stay was lifted. 
The Wingates further assert that, even if Acree obtained a release from the stay, he does not allege
that the release permitted a trial on his breach of contract claim. 

            We note, however, that after the Wingates filed their brief, a supplemental clerk’s record
was filed containing an order granting Acree relief
from the stay, signed by the federal bankruptcy judge.  The order expressly permits Acree to pursue the present suit to final judgment without
setting any limitation on the type of claims allowed.  Therefore, when the bankruptcy court lifted
the stay to proceed with the present litigation, it necessarily included the
contract claims contained in Acree’s petition.  Accordingly, the Wingates’
first issue is overruled.

B.  Actual Damages Award

            In their second issue, appellants
contend the trial court erred in awarding actual damages because: (1) in
response to the only question regarding actual damages, the jury found no
damages; and (2) no breach of contract claim was presented to the jury.  The Wingates also
complain that the trial court impermissibly awarded exemplary damages when
there was no award of actual damages.

            However, except as to the exemplary
damages issue, the Wingates wholly fail to cite any
authority, and have failed to adequately brief their arguments on appeal.  Accordingly, their arguments concerning
actual damages are waived.  Tex. R. App. P. 38.1(h); see also
Trenholm v. Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983); Wright v. Greenberg, 2 S.W.3d 666, 673
(Tex. App.—Houston [14th Dist.] 1999, pet. denied). 

            Although exemplary damages cannot be
awarded in the absence of an actual damages award, see Tex. Civ.
Prac. & Rem. Code §
41.004, in this case there was an award of actual damages by the  trial court. 
Because appellants failed to brief the issue regarding the trial court’s
award of actual damages, we overrule their second issue.

C.  Statute of Limitations

            In their third issue, the Wingates contend the statutes of limitations barred Acree’s causes of action. 
The Wingates, however, do not identify the
applicable statutes and only cite to a case discussing limitations for breach
of fiduciary duty.  Accordingly, we find
that by failing to properly brief the issues, they have waived their
limitations arguments except as to breach of fiduciary duty.  See
Tex. R. App. P. 38.1(h); Wright, 2 S.W.3d at 673.

            Even if the Wingates
had properly raised their issues on appeal, we find they failed to preserve any
of their limitations arguments, including breach of fiduciary duty, in the
trial court.  In order to rely on the
affirmative defense of limitations, a defendant must plead, prove, and secure
findings to sustain the affirmative defense. 
Woods v.  Mercer, 769 S.W.2d 515, 517 (Tex.
1988).  The record does not reflect that
the Wingates requested a jury question on the
applicable statute of limitations defense. 
By failing to do so, they have not preserved these arguments for
appellate review.  See Rivas v. Cantu, 37 S.W.3d 101, 116–17 (Tex. App.—Corpus Christi
2000, pet. denied) (holding defendant failed to preserve statute of frauds
defense by, inter alia,
failing to request jury charge or object to absence of charge issue); Abraxas Petrol. Corp. v. Hornburg,
20 S.W.3d 741, 763 (Tex. App.—El
Paso 2000, no pet.) (holding defendant waived estoppel
and waiver defenses by failing to submit a jury question).  Accordingly, we overrule appellants’ third
issue.

D.  DTPA Claim

            In their fourth issue, the Wingates contend the trial court erred in awarding Acree  judgment on
his DTPA cause of action because money is not a “good” as defined by the
DTPA.  See Tex. Bus. & Com.
Code §§ 17.01-.854.  To recover
under the DTPA, a plaintiff must establish: (1) he or she was a consumer of the
defendant’s goods or services; (2) the defendant committed false, misleading,
or deceptive acts in connection with the lease or sale of goods or services;
and (3) such acts were a producing cause of actual damages to the
plaintiff.  See id. § 17.50(a); Brown v. Bank of Galveston, N.A., 963 S.W.2d 511, 513 (Tex.
1998).  In support of their argument, the
Wingates cite only Riverside National Bank v. Lewis, 603 S.W.2d 169 (Tex.
1980).  In Riverside, the court
held that a loan applicant’s attempt to borrow money for the purchase of a car
did not involve goods or services so as to make him a consumer under the
DTPA.  Id. at 174.[2]

            In their brief, the Wingates attempt to limit Acree’s
DTPA claim as merely a claim to recover a debt. 
However, Acree’s pleadings and the evidence
presented at trial demonstrate that his claim is not so limited.  Acree testified he
was induced into investing in the Wingates’s business
by both Karen and Keith.  He specifically
stated that he sought investment advice from Karen who was the branch manager
of his bank.  Keith Wingate testified
that Acree was at one time considered a partner in
the business and was expected to share in the business profits.  See
generally Howell Crude Oil Co. v. Donna Refinery Partners, Ltd.,  928 S.W.2d 100, 111 (Tex. App.—Houston [14th
Dist.] 1996, writ denied) (stating loss of capital investment may be recovered
under the DTPA in a proper case); Frizzell v. Cook,
790 S.W.2d 41, 43 (Tex. App.—San Antonio 1990, writ denied) (holding broker
could be liable under DTPA for misrepresentations made when investment advice
was inextricably intertwined with the purchase of securities).

            The Wingates
do not make any arguments regarding the other grounds for Acree’s
DTPA claim.   Indeed, their entire
argument under this issue comprises two sentences and a citation to Riverside.  We decline to sua sponte address these grounds, make no
determination as to whether they are actionable under the DTPA, and overrule
the Wingates’ fourth issue.  See generally Nationwide Prop.
& Cas. Ins. Co. v. McFarland, 887 S.W.2d 487,
496 (Tex. App.—Dallas 1994, writ denied) (declining to consider unassigned
error). 

E.  Intent to Not Pay

            In their fifth issue, the Wingates contend Acree’s fraud
claim fails because there was no evidence to support the conclusion that they
did not intend to pay Acree at the time of their
agreement.  The jury found that both Wingates committed fraud. 
In determining whether there is no evidence of probative force to
support a jury’s finding, all the record evidence must be considered in the
light most favorable to the party in whose favor the verdict has been rendered,
and every reasonable inference deducible from the evidence is to be indulged in
that party’s favor.  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  If more than a scintilla of
probative evidence supports the finding, the no evidence challenge fails.  Minn.
Mining & Mfg. Co. v. Nishika Ltd., 953 S.W.2d
733, 738 (Tex.
1997).  More than a scintilla of evidence
exists where the evidence supporting the finding, as a whole, rises to a level
that would enable reasonable and fair-minded people to differ in their
conclusions.  Havner, 953 S.W.2d at 711.  A no evidence point will be sustained when:
(1) there is a complete absence of evidence of a vital fact; (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla; or (4) the evidence conclusively establishes
the opposite of a vital fact.  Id.

            A failure to perform pursuant to an
agreement may constitute fraud under certain circumstances.  “A promise to do an act in the future is
actionable fraud when made with the intention, design and purpose of deceiving,
and with no intention of performing the act.” 
Spoljaric v. Percival Tours, Inc., 708 S.W.2d
432, 434 (Tex. 1986); see also Turboff
v. Gross, 833 S.W.2d 235, 238 (Tex. App.—Houston [14th Dist.] 1992, writ
denied).  While the intent not to perform
must be determined as of the time the party made the promise, such intent may
be inferred from subsequent conduct.  Spoljaric, 708
S.W.2d at 434; Oliver v. Rogers, 976
S.W.2d 792, 804 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  The determination of intent is uniquely an
issue for the jury because it depends on the weight and credibility to be
assigned to testimony.  Spoljaric, 708
S.W.2d at 434.  While failure to perform,
standing alone, is no evidence of intent not to perform, it may be considered
in the light of other facts in establishing intent.  Id. at 435.

            During the trial, evidence was
offered to show the Wingates: (1) used the business’s
assets to pursue other interests, without having paid Acree;
(2) failed to list the loan from Acree as a debt in
applying for a loan from the Small Business Administration; and (3) on at least
two occasions suggested that payments were about to be made to Acree and subsequently did not make those payments.  We find these facts amount to more than a
scintilla of evidence that the Wingates did not intend
to pay back the loan at the time of the agreement.  Accordingly, we overrule appellants’ fifth
issue.

F.  Fiduciary Duty

            In their sixth issue, the Wingates contend no evidence supports the jury’s finding of
a fiduciary relationship between them and Acree.  As stated above, in reviewing legal
sufficiency we consider all of the record evidence in the light most favorable
to the party in whose favor the verdict has been rendered and indulge every
reasonable inference deducible from the evidence in that party’s favor.  Havner, 953 S.W.2d at 711. 
If more than a scintilla of probative evidence supports the finding, the
no evidence challenge fails.  Minn. Mining & Mfg. Co., 953 S.W.2d
at 738.

            Informal fiduciary relationships may
arise in circumstances “where a special confidence is reposed in another who in
equity and good conscience is bound to act in good faith and with due regard to
the interests of the one reposing confidence.”  Tex. Bank & Trust Co. v. Moore, 595
S.W.2d 502, 507 (Tex. 1980); Herrin v. Med. Protective Co., 89 S.W.3d
301, 307–08 (Tex.
App.—Texarkana 2002, no pet.).  A
confidential relationship exists in cases in which “influence has been acquired
and abused, in which confidence has been reposed and betrayed.”  Associated
Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d
276, 287 (Tex. 1998) (quoting Crim Truck &
Tractor Co. v. Navistar Int’l Transp. Corp., 823
S.W.2d 591, 594 (Tex. 1992)).  To impose
such a relationship in a business transaction, the relationship must exist
prior to and apart from the transaction. 
Schlumberger Tech. Corp. v.
Swanson, 959 S.W.2d 171, 177 (Tex.
1997).  Whether a confidential
relationship exists is usually a matter for the trier
of fact because the existence of the relationship hinges on the surrounding
circumstances.  Herrin, 89 S.W.3d at 308.

            The Wingates
argue generally that Acree’s subjective trust does
not transform an arms-length transaction into a fiduciary relationship and that
the fact a relationship was cordial and long-lasting does not necessarily prove
a confidential relationship existed, citing Thigpen
v. Locke, 363 S.W.2d 247, 253 (Tex. 1962). 
Regarding Karen, they argue simply that she never participated in the
loan.

            At trial, Keith Wingate testified
that he and Acree were friends.[3]  He further acknowledged he was obliged to act
in utmost good faith toward Acree, use scrupulous
honesty with him, and place Acree’s interests above
his own in regard to the business. 
Evidence also demonstrated that at one point, the Wingates
had considered Acree a partner in the business.[4]  In her testimony, Karen admitted having known
Acree since 1989, and she said they were good friends
who had spent a lot of time together. 
Karen further testified Keith met Acree in
1991 and they were friends as well.  Acree testified Karen provided investment advice to him on
several occasions, including his purchase of a CD, and she later encouraged his
investment in K and K Preferred Auto, without informing him that it was an
assumed name for her as well as Keith. 
She also suggested he grant her a power of attorney so she could
transfer money from his account and subsequently did move money from his
account.

            We find the foregoing constituted
more than a scintilla of evidence that a fiduciary relationship existed between
Acree and the Wingates.  The evidence was therefore legally sufficient
to support the jury’s finding, and  we
overrule issue number six.

G.  Breach of Contract

            In their seventh issue, the Wingates contend: (1) Acree
failed to meet his burden of proving a breach of contract and obtaining a jury
question on the claim; and (2) the trial court erred in supplying a
fact-finding regarding the issue of breach of contract.[5]  The Wingates
provide no cognizant argument concerning this issue and fail to cite to the
record or any authority.  Accordingly,
they have waived the issue due to inadequate briefing.  See Tex. R. App. P. 38.1(h); Wright, 2 S.W.3d at 673.  Issue seven is overruled.

H.  Attorneys’ Fees

            In their eighth issue, the Wingates contend: (1) the trial court erred in awarding
attorney’s fees absent a proper breach of contract or DTPA claim; (2) no
evidence was ever presented to the trial court supporting the amount of
attorney’s fees; and (3) Acree failed to 

 class=Section3>

submit
a pretrial demand for attorney’s fees pursuant to section 38.002 of the Civil
Practice & Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann.
§ 38.002.  Once again, the Wingates fail to provide appropriate citation to the record
and authorities, thus waiving these arguments. 
See Tex. R. App. P. 38.1(h); Wright,
2 S.W.3d at 673.

            Furthermore, even if the arguments
were properly briefed, they are without merit. 
We find the first argument, regarding the absence of a valid DTPA or
breach of contract cause of action, is moot because, as discussed above, we are
affirming the trial court’s judgment as to those claims.  Second, the Wingate’s argument that there was
never any evidence presented to the trial court regarding the amount of
attorney’s fees is simply in error.  The
trial court held an evidentiary hearing and received both testimonial and
documentary evidence regarding Acree’s fees.

            Third, regarding presentment of
attorney’s fees, the Wingates are again in
error.  Section 38.002 does not require a
party seeking attorney’s fees to make a “pretrial demand in writing for
attorney’s fees” as they suggest; instead, it is the underlying claim for
damages that must be presented.  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.002; McMann v. McMann, 942 S.W.2d 94, 97 (Tex.
App.—Houston [1st Dist.] 1997, no pet.). 
Additionally, regarding this argument, Acree
pled that all conditions precedent to recovery had been fulfilled.  He need not then provide evidence on such an
issue unless specifically denied by the opposing party.  See Tex. R. Civ. P. 54; Associated Indem.
Corp., 964 S.W.2d at 283 n.6.  The Wingates did not specifically plead any failure to satisfy
conditions precedent to recovery of attorneys’ fees; therefore, Acree did not have to demonstrate presentment.  See
Cook Composites, Inc. v. Westlake Styrene Corp., 15 S.W.3d 124, 138 (Tex.
App.—Houston [14th Dist.] 2000, pet. dism’d) (stating
that pleading all conditions had been met for award of attorney’s fees relieved
party of burden of proof in absence of specific denial); see also Wallace v. Ramon, 82 S.W.3d 501, 505 (Tex. App.—San
Antonio 2002, no pet.) (holding lack of verified denial dispenses with
necessity of proof of presentment); Knupp v. Miller,
858 S.W.2d 945, 955 (Tex. App.—Beaumont 1993, writ denied) (holding claim for
attorney’s fees in trespass action was subject to Rule 54).  Accordingly, we overrule issue number eight.[6]

            The judgment of the trial court is
affirmed.

 

 

                                                                                    

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed April 24, 2003.

Panel
consists of Justices Edelman, Seymore, and Guzman.

 

 











            [1]  Texas Deceptive
Trade Practices Act,  Tex. Bus. & Com. Code §§
17.01-.854.





            [2]  At least one commentator has noted the
“whittling away” of the Riverside doctrine
by subsequent opinions.  See James W. Paulson, Lenders and the Texas DTPA: A Step Back From
the Brink, 48 SMU L. Rev. 487,
501–19 (1995) (discussing three exceptions to Riverside: (1) where the lender offers collateral services; (2)
where the lender is “inextricably intertwined” with the transaction; and (3) where
the loan itself can be considered a service).





            [3]  Keith stated he and Acree
were pretty close friends, he (Keith) had “a tremendous amount of compassion
and love” for Acree and Acree’s
wife, and he “tried to be a counselor and advise [Acree]
where [he] could.”





            [4]  Partners in a partnership owe each other a
formal duty of fiduciary duty.  See Chapman Children’s Trust v.  Porter & Hedges, L.L.P., 32 S.W.3d
429, 439 (Tex. App.—Houston [14th
Dist.] 2000, pet. denied).  Certainly,
evidence regarding the existence of a formal fiduciary relationship may, in
appropriate circumstances, also constitute evidence of the existence of an
informal fiduciary relationship.





            [5]  The Wingates also
assert under this issue that Acree has never alleged
the bankruptcy court would allow a breach of contract claim and that no
predicate request was made for an award of attorneys’ fees.  Each of these arguments, however, is made
more fully under another issue.  The
bankruptcy stay is discussed above under the first issue, and the award of
attorneys’ fees is discussed below under the eighth issue.  Accordingly, we do not re-address those
arguments here.





            [6]  Although the Wingates
do not raise the issue, we note the DTPA does indeed require notice to be given
of the amount of attorney’s fees prior to filing suit.  Tex.
Bus. & Com. Code Ann. § 17.505(a). 
However, because the Wingates have not
contested this issue in the trial court or on appeal, they have waived it.  See,
e.g., Hines v. Hash, 843 S.W.2d 464, 469 (Tex. 1992)
(holding defendant waived right to DTPA notice by failing to request abatement
of proceedings).